# COURT OF APPEALS OF VIRGINIA

### Record No. 0269-25-2

## RAND CORPORATION, ET AL.
v.
## TRACI A. WILLIAMS

Present: Judges Beales, O'Brien and Ortiz
Argued at Richmond, Virginia

Opinion Issued July 14, 2026[*]

### FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Jesse F. Narron (K. Elizabeth O'Dea; PennStuart, on brief), for appellants.

No brief or argument for appellee.

## MEMORANDUM OPINION BY
## <u>JUDGE RANDOLPH A. BEALES</u>

RAND Corporation and Legion Insurance Company/District of Columbia Insurance
Guaranty Association (collectively "RAND") appeal the Workers' Compensation Commission's
award to Traci A. Williams for treatment related to her post-traumatic stress disorder (PTSD).
RAND argues that the evidence did not support the award. RAND also argues that the
Commission violated the after-discovered evidence rule by ordering Williams to provide receipts
to RAND for reimbursement.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Williams worked as a research assistant for the RAND Corporation, and she was assigned to work at the Pentagon during the September 11, 2001 terrorist attacks. Part of her work involved establishing "protocols to defend against terrorist attacks." She was "working at the Pentagon as a civilian performing my job responsibilities where and when the terrorists attacked the crucial side of the site." She immediately sought mental health treatment for PTSD, and in October 2001, she submitted a worker's compensation claim to the Virginia Workers' Compensation Commission. In 2003, the Commission entered an award of (1) temporary total disability benefits from September 11, 2001 through June 1, 2002, (2) temporary partial disability benefits from June 2 through June 28, 2002, (3) temporary total disability benefits from June 29 through July 31, 2002, and (4) medical benefits "for as long as necessary."

In 2010, RAND stopped reimbursing Williams because she did not present any medical records proving that the invoices she submitted for reimbursement were causally related to her PTSD. RAND alleged that Williams had "not met her burden of proof that the treatment is reasonable, necessary & causally related to the original injury" and instructed her to "file a claim with the Virginia WCC." Williams did so, requesting reimbursement from the Commission. In 2015, the parties agreed to settle all outstanding claims through August 30, 2014 for a lump sum of $10,000. The parties then litigated reimbursements for treatment after August 2014 with the Commission.

Between 2019 and 2023, Williams filed several requests for reimbursement for medical treatment, mileage, and prescriptions, and she also sought vocational rehabilitation.

---

[1] "On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (*en banc*)).

On June 14, 2023, the Commission held a hearing on Williams's requests before Deputy Commissioner Wulf. At the hearing, Williams presented evidence of prescription drugs she had paid for out of pocket, as well as roundtrip mileage to several different providers.

Williams testified at the hearing. She testified that she moved from Washington, D.C. to Texas to be closer to family, and began seeing Dr. Urschel, a psychiatrist, in November 2011. She testified that she did EMDR therapy, talk therapy, and group therapy with Dr. Urschel and that he prescribed her medication for her PTSD and depression. Dr. Urschel noted that Williams suffered from anxiety and depression, with mild paranoia.

Williams testified that in 2016, she stopped seeing Dr. Urschel and began seeing a psychiatric nurse practitioner, Cynthia Savelli, at the Hopper Group. Savelli treated Williams for PTSD and major depressive disorder using one-on-one therapy, and she also prescribed Williams medications. Savelli noted that Williams suffered from anxiety, low mood, distraction, sleep problems, and depression since September 11, 2001.

Savelli referred Williams to Dr. Vu for psychological testing. Dr. Vu's psychological assessment concluded that Williams "was a witness to the events of September 11, 2001, and reports symptoms of PTSD ever since." She also noted that Williams was experiencing symptoms of "over sleeping, loss of appetite, and feelings of isolation" and that "[s]he is endorsing a severe level of depression." Dr. Vu administered several tests to evaluate Williams's cognitive functioning and mental health, and diagnosed her with "Major Depressive Disorder, recurrent episode, severe with melancholic features," and PTSD. She recommended continued treatment with a psychiatrist for medication management and a therapist to work through the PTSD symptoms. Dr. Vu also suggested that Williams attend group sessions to address symptoms of depression and isolation.

Savelli then referred Williams to Barbara Neal, a licensed professional counselor, for therapy. Neal noted that Williams was a survivor of September 11 and suffered from a loss of job, friends, and home, and that she had been unable to sustain a job. Williams stopped therapy with Neal after a few sessions because she found it unhelpful. Savelli also referred Williams to Jan Scott for therapy, which Williams found to be more effective. Williams later told Savelli that she felt better and wanted to reduce her medications, but that she continued to have passive thoughts of suicide. Williams's mood continued to improve on the lower dosage of medications.

In 2016, Williams stopped treating with Savelli and the Hopper Group because she could no longer afford it. Shortly after, Williams reported to the emergency room at Green Oaks Hospital because "I was feeling depressed and suicidal. And I've been out of therapy and I was not in a good state and I know that I needed the only way to get help and psychiatric help was to go to the emergency room."

Upon discharge, Williams began medication management at the outpatient mental health center with Susan Collins, a psychiatric nurse practitioner. Collins diagnosed Williams with PTSD, generalized anxiety disorder, and major depressive disorder with psychotic features. Collins noted that Williams had experienced a deterioration in functioning since September 11, 2001.

Collins referred Williams to Finding Freedom Therapy with Amanda Noyes, a licensed social worker, for one-on-one talk therapy. Noyes treated Williams's ongoing PTSD from September 2017 to June 2020, until Williams could not afford to continue with her treatment. In 2019, Noyes noted that Williams continued to struggle with PTSD symptoms, including: "decreased ability to function, fatigue, impaired insight, impaired judgement [sic], depression, anxiety, increased anger/irritability, mild verbal aggression at times, suicidal ideation,

nightmares, panic attacks, social anxiety, hyper-vigilance, guilt/shame, obsessive thoughts and rumination, and avoidance in addition to grief and feelings of a foreshortened future."

A few months after she ended treatment with Noyes, Williams began seeing Dr. Higgins, a psychiatrist. Dr. Higgins treated Williams for PTSD and major depressive disorder. Dr. Higgins prescribed Trazadone for sleeplessness, Focalin for ADHD, Prozac for major depressive disorder, and also Lamictal for major depressive disorder, noting that "Patient has refractory depression due to chronic head injury and not being responsive to the antidepressant alone." Williams saw Dr. Higgins regularly for about two years, until she could no longer afford to pay for treatments. Williams testified that although she was not currently seeing Dr. Higgins for treatment because of the cost, she was still considered his patient and would return when she could afford to do so.

Williams testified about her ongoing symptoms. She testified that she had a "deep sense of sadness," depression, sleeplessness, isolation, and insecurity. She testified that she experienced a high level of stress around paying for her medical care. She explained that she was seeking vocational rehabilitation to "build back my career" since she had struggled to find work in the aftermath of the terrorist attack on September 11, 2001. She testified that she worked retail jobs "that I could do part time while trying to go to therapy and while looking for policy jobs that would utilize the skills that I had." At the conclusion of the hearing, the deputy commissioner closed the record.

On June 27, 2023, Deputy Commissioner Wulf issued a letter opinion, in which he held that Williams had not met her burden of proving that her medical treatment was causally related to the accident because she had not presented contemporaneous treatment records from several of her providers. Deputy Commissioner Wulf denied Williams's claims for payments for medical treatment, prescriptions, and mileage reimbursements—as well as her request for

- 5 -

vocational rehabilitation. Williams subsequently requested a review of Deputy Commissioner Wulf's opinion by the full Commission.

On April 1, 2024, the full Commission issued a review opinion. The full Commission reversed Deputy Commissioner Wulf's decision, holding that Williams had "met her burden of proving much of her requested medical treatment was causally related to the work accident." The full Commission affirmed Deputy Commissioner Wulf's denial of Williams's request for vocational rehabilitation and remanded the case for the deputy commissioner to consider RAND's remaining defenses.[2]

On April 10, 2024, on remand, Deputy Commissioner Wulf found that asserting a causal relation defense rendered RAND's unauthorized treatment defense moot. He further found that once the full Commission found that Williams had met her burden of proving causation and once Deputy Commissioner Wulf had found that her treatment was authorized, "there is a presumption the treatment is reasonable and necessary." Finally, he found that RAND was responsible for mileage reimbursement to and from Williams's appointments with providers, but not for mileage to and from pharmacies. Deputy Commissioner Wulf held that RAND was only responsible for mileage reimbursement "on the dates of treatment as established by medical records that were filed before the hearing on June 14, 2023."

RAND then requested that the full Commission review Deputy Commissioner Wulf's April 10, 2024 remand opinion. The Commission set a schedule for each party to submit written statements. In its written statement, RAND argued that the award failed to "clearly indicate the bills and mileage which Defendants are required to pay." RAND argued that it should be

---

[2] Commissioner Rapaport concurred in part and dissented in part, agreeing with the full Commission and Deputy Commissioner Wulf's denial of vocational rehabilitation services, but also finding that Williams had failed to bear her burden of proving that her treatment was causally related to the terrorist attacks.

responsible for reimbursing only medical treatment "supported by contemporaneous medical reports from each specific date of treatment and prescription fill, and which medical records were filed prior to the June 14, 2023 hearing." Williams filed her written statement a day late, including voluminous documents that were not presented to the Commissioner at the June 14, 2023 hearing. The Commission did not consider her statement because it was late.

On January 13, 2025, the full Commission issued a review opinion.[3] It declined to reconsider the issues it had already decided in its first review on April 1, 2024, confirming that "[a] finding of causation need not be based exclusively on medical evidence, and a claimant is not required to produce a physician's medical opinion . . . to establish causation." The full Commission affirmed Deputy Commissioner Wulf's award of medical benefits, specifically rejecting RAND's argument that there was insufficient evidence to establish what dates of treatment RAND was responsible for paying. The Commission stated that "[w]hile the medical records are incomplete, they are not devoid of information apprising the defendants of when the claimant was seen for medical treatment by the above-named providers." Finally, the Commission directed Williams to "provide the defendants with documentation for any payments made by her for the treatment which has been deemed reasonable, necessary, and causally related to the accident." RAND now appeals to this Court.[4]

---

[3] Commissioner Rapaport again dissented. He stated that he "would continue to find that the medical treatment at issue should be denied" because "the claimant failed to sustain her burden of proof" that established "a causal connection between the occupational injury and the sought-after medical treatment."

[4] Williams also appealed, but we dismissed that separate appeal for failure to file an opening brief. *Williams v. RAND Corp.*, No. 0318-25-2 (Va. Ct. App. July 18, 2025) (order). We, therefore, deny RAND's pending motion to dismiss Williams's appeal as the question is now moot.

## ANALYSIS

### I. Sufficiency of the Evidence

On appeal, RAND argues, "The Virginia Workers' Compensation Commission erred as a matter of law in finding that Williams' evidence is sufficient to establish that Williams met her burden of proof that the treatment and reimbursements sought by Williams are reasonable, necessary, and causally related to the compensable work accident."

Virginia law requires that the Commission's decisions "be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). "Instead, 'we are bound by the [C]ommission's findings of fact as long as "there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved," even if there is evidence in the record that would support a contrary finding.'" *Springfield Pest v. Peterman*, 82 Va. App. 668, 679 (2024) (alteration and emphasis in original) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83-84 (2005) (*en banc*)).

"The [C]ommission's determination regarding causation is a finding of fact." *City of Newport News v. Kahikina*, 71 Va. App. 536, 545 (2020) (alteration in original) (quoting *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 26 (2005)). "A finding of causation need not be based exclusively on medical evidence, and a claimant is not required to produce a physician's medical opinion in order to establish causation." *Marshall*, 47 Va. App. at 26 (citing *Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 176-77 (1996)). "Causation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" *Id.* (quoting *Cridlin*, 22 Va. App. at 176).

The record contains credible evidence that supports the Commission's finding that the September 11, 2001 terrorist attacks caused Williams's PTSD that led to her continued need for treatment after August of 2014. After September 11, Williams's psychiatrist diagnosed her with PTSD, and the Commission subsequently awarded her with temporary disability benefits and medical benefits. After August 2014, all of her providers related their treatment to Williams's PTSD resulting from her experience on September 11, 2001. Although Neal's and Noyes's opinions were not ratified by other providers,[5] Savelli and Collins both independently diagnosed Williams with PTSD triggered by the September 11 terrorist attack that she survived—and related her ongoing symptoms to her PTSD.

In addition to this expert evidence, Williams herself testified directly that she had ongoing psychological symptoms as a result of her experience on September 11. She testified at length about her "deep sense of sadness," depression, sleeplessness, isolation, and insecurity, and about how she had struggled to find work in the aftermath of the September 11 attack. Moreover, Williams's testimony about her ongoing struggle with PTSD and her poor overall mental health was corroborated by her treatment providers. Given that causation is a determination of fact, given that causation can be proven by the testimony of a claimant, and given that we defer to the Commission's findings of fact, we do not disturb the Commission's finding of fact that Williams's need for treatment was causally related to her workplace injury on September 11, 2001.

---

[5] The Commission has held that the medical opinions of licensed clinical social workers are not accepted evidence "except to the extent such opinions may be ratified and incorporated in the medical reports of licensed physicians as their own opinions." *Rother v. Prince William Cnty. Sch. Bd.*, VWC No. 230-67-74, slip op. at 6 (Va. Workers Comp. Comm'n Dec. 15, 2008); *see also Fairfax Cnty. Sch. Bd. v. Fish*, No. 1159-02-4, slip op. at 10 n.1 (Va. Ct. App. Nov. 19, 2002) (assuming without deciding that this interpretation of the law by the Commission is accurate).

## II. After-Discovered Evidence Rule

RAND also argues that the

> Commission erred as a matter of law by failing to identify in its January 13, 2025 review opinion the specific dates of treatment, providers, prescriptions, and mileage reimbursement requests for which RAND is responsible for payment, and instead issuing a directive to Williams that she provide additional evidence and documentation, after the hearing and issuance of the January 13, 2025 review opinion, to RAND to support her requests for reimbursement.

RAND argues that this directive functionally reopened the record which violated the after-discovered evidence rule.

Rule 3.3 of the Rules of the Commission states, "No new evidence may be introduced at the time of review except upon agreement of the parties. A petition to reopen or receive after-discovered evidence may be considered only upon request for review." "Except for rules which the Commission promulgates, it is not bound by statutory or common law rules of pleading or evidence nor by technical rules of practice." *Estate of Kiser v. Pulaski Furniture Co.*, 41 Va. App. 293, 298 (2003). "The '[c]ommission is afforded considerable latitude in adapting the conduct of hearings to the circumstances of the case.'" *Id.* (alteration in original) (quoting *Kim v. Sportswear*, 10 Va. App. 460, 470 (1990)). "When a challenge is made to the commission's construction of its rules, the appellate court's review is limited to a determination of whether the commission's interpretation was reasonable. The commission's interpretation will be accorded great deference and will not be set aside unless arbitrary or capricious." *Id.* at 299 (quoting *Rusty's Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 129 n.2 (1999)).

The Commission's Rule 3.3 applies "when a party seeks to introduce new evidence at the 'time of review'" (i.e., at a hearing). *Id.* at 298. However, the issue before the Commission was the causation of Williams's injury—not Williams's ability to prove what payments she made to what provider. The Commission ordered Williams to produce this additional documentation in order to

- 10 -

aid RAND's ability to reimburse Williams for the expenses she had incurred. RAND improperly conflates a rule governing the evidence the Commission will consider on review of a claim at a hearing with its own obligation (after the Commission has made its decision and ruled) to reimburse Williams for expenses she has incurred (as substantiated by the receipts). In short, the receipts are not new evidence introduced before the full Commission at a hearing, so Rule 3.3 has no bearing.

CONCLUSION

For all of the foregoing reasons, we do not disturb the decision of the Virginia Workers' Compensation Commission.

*Affirmed.*